**SO ORDERED.**

**SIGNED this 03 day of January, 2008.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| THOMAS KELLY SEWELL | 07-00777-5-ATS |
| DEBTOR | |

**ORDER REGARDING OBJECTION TO CONFIRMATION
AND OBJECTION TO AMENDED CLAIM**

The matters before the court are the objection filed by Barbara Sewell to confirmation of the plan filed by the chapter 13 debtor, Thomas Kelly Sewell, and the debtor's objection to Ms. Sewell's amended claim. A hearing took place in Raleigh, North Carolina on December 18, 2007.

Thomas Kelly Sewell filed a petition for relief under chapter 13 of the Bankruptcy Code on April 16, 2007. Barbara Sewell, the debtor's former wife, has a claim for $19,000 that arises from a separation agreement between the parties. Ms. Sewell contends that the claim represents a domestic support obligation that is entitled to a priority. Mr. Sewell maintains that the claim is a general unsecured claim.

Curiously, at the start of the case, the positions of the parties were reversed. Ms. Sewell filed a proof of claim on May 3, 2007, for a general unsecured claim in the amount of $19,000, but she amended her claim on November 16, 2007, asserting that her claim is a priority domestic support

obligation. In Schedule E to his petition, the debtor listed Ms. Sewell as a creditor with an unsecured priority claim in the amount of $19,000. Furthermore, in his chapter 13 plan filed on April 30, 2007, he listed the claim as a domestic support obligation with a $19,000 arrearage. The debtor filed an amended chapter 13 plan on May 10, 2007, which stated that there are no holders of domestic support obligations and provided for no priority claims.

The term domestic support obligation was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. 109-8, 119 Stat. 23 § 211 (April 20, 2005) .

"Domestic support obligation" is defined in 11 U.S.C. § 101(14A) as a debt that is –

(A) owed to or recoverable by–
    (i) a spouse, former spouse . . .
                            * * *
(B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, without regard to whether such debt is expressly so designated;
(C) established or subject to establishment before, on, or after the dateof the order for relief in a case under this title, by reason of applicable provisions of–
    (i) a separation agreement, divorce decree, or property settlement agreement;
                            * * *
and
(D) not assigned to a nongovernmental entity . . . .

11 U.S.C. § 101(14A).

A domestic support obligation claim is entitled to a first priority pursuant to § 507(a)(1)(A) and, pursuant to § 1322(a)(2) and § 1325(a)(1), a chapter 13 plan may not be confirmed unless all domestic support obligations are paid in full. Domestic support obligations are nondischargeable in chapter 7 cases pursuant to § 523(a)(5) and § 727(b).

Although the term domestic support obligation was added to the Bankruptcy Code by BAPCPA, the concept is not new. Prior to BAPCPA, claims for alimony, maintenance or support

2

were entitled a seventh priority, and as priority claims, payment in full was a requirement to confirmation of a chapter 13 plan under § 1325(a)(1) and § 1322(a)(2). Also, claims for alimony, maintenance and support were nondischaregeable in chapter 7 cases prior to BAPCPA pursuant to § 523(a)(5) and § 727(b).

The issue usually comes down to, as it does in this case, whether the claim is one for alimony, maintenance or support or is one arising from a property settlement, the former being entitled to priority treatment, and the latter being merely a general unsecured claim. If the claim arises from an agreement between the parties, the determining factor is the intent of the parties at the time the agreement was reached. Unfortunately, at the time of a separation or divorce agreement, most parties are only interested in how much will be paid and not how the obligation will be characterized. To determine the parties' intention, the court must consider the terms of the agreement, but labels given to the obligations in the agreement are not controlling and the court must also consider the overall circumstances of the parties. Tilley v. Jessee, 789 F.2d 1074 (4th Cir. 1986) (decided under the Bankruptcy Act). Some of the factors that are relevant include:

> the nature of the obligation, whether there are dependent children, the relative earning power of the spouses and an indication that the obligation was an attempt to balance it, the adequacy of the dependent spouse's support without the assumption of the obligation, dependent spouse's receipt of inadequate assets in settlement, status of the obligation upon death or remarriage, timing of payments (lump sum or periodic), the payee (direct vs. indirect), waivers of maintenance, whether the obligation is modifiable, location of the paragraph containing the obligation within the agreement (whether or not it is located within the property distribution section), and the tax treatment of the obligation.

Sawtelle v. Keech (In re Keech), Adv. Pro. No. L-03-00109-8-AP at 6-7 (Bankr. E.D.N.C. Jan. 7, 2004) (citations omitted). See also Zeitchik v. Zeitchik (In re Zeitchik), 369 B.R. 900, 904 (Bankr. E.D.N.C. 2007).

3

The Sewells were married on August 17, 1976, and entered into a separation agreement dated September 30, 2004. Ms. Sewell was not represented by counsel in connection with the separation, and the agreement was drafted by the debtor's attorney.

Under the agreement, Ms. Sewell was given, subject to two liens, the marital residence in Princeton, North Carolina. Ms. Sewell agreed to be responsible for the first lien, a deed of trust in favor of North Carolina State Employees Credit Union in the amount of $67,800, and Mr. Sewell agreed to be responsible for the second lien, an equity line in the amount of $18,809.88. It is Mr. Sewell's obligation for the equity line that is at issue in this proceeding.

Ms. Sewell testified that could not make the payments on both the $67,800 deed of trust and the $18,809.88 equity line. She was also required to refinance the first lien into her name alone under the terms of the separation agreement. The new lender insisted that the equity line be paid, and Ms. Sewell refinanced both the deed of trust and the equity line. In connection with that transaction, the separation agreement was amended and Mr. Sewell agreed to pay Ms. Sewell $19,000 in monthly installments of $300. Unexplainably, the amendment which is attached to the separation agreement (Exhibit 1) does not contain the signatures of the parties, but there is a certification by two notaries that Ms. and Mr. Sewell signed the amendment on November 9 and November 15, respectively.

In addition to being given the house, Ms. Sewell was given her personal property and her automobile. Separation Agreement at ¶ 7(b) and (c). Mr. Sewell was given his personal property, his automobile and his military and government retirement benefits. Separation Agreement at ¶ 7(b), (c) and (d). Mr. Sewell also agreed to be responsible for a credit card debt of $6,075 and a loan from Four Oaks Bank of $3,500.

In paragraph 5 of the agreement both parties relinquished claims for alimony, maintenance and support, but provided in paragraph 11 that in the event of bankruptcy by either party "all provisions contained herein, whether enumerated as support or property, shall be considered as in the nature of support for spouse and shall not be discharged in bankruptcy."

Paragraph 12 of the agreement provides that, if the parties agree, they have the option of filing joint tax returns for 2004 and for an equal division of any refund. However, there is no mention in the agreement of any tax attributes to the payments made by Mr. Sewell of the assumed $19,000 debt.

Paragraph 17 of the agreement provides that modification or waiver of the agreement shall be effective only if made in writing and there is no part of the agreement that provides for the termination of the obligations undertaken by Mr. Sewell in the event of Ms. Sewell's death or remarriage.

Ms. Sewell's primary argument is that the obligation is in the nature of alimony, maintenance and support, because Paragraph 11 of the agreement provides that in the event of bankruptcy the obligation shall be considered in the nature of support for the spouse. This is especially so, according to Ms. Sewell, because the agreement was drafted by Mr. Sewell's attorney and the agreement should be construed against the debtor. But, as previously observed, the court is not bound by the labels used by the parties in the agreement. The court must examine all the circumstances to determine the parties' intentions.

It is not clear that Ms. Sewell was dependent upon Mr. Sewell for support. Both parties were employed and had incomes. Mr. Sewell earned more than his wife, but the difference was not

significant. The Sewells had two children, but at the time of the agreement they had reached the age of 18 and were not dependants.

Ms. Sewell knew that she would have difficulty paying both the first deed of trust and the equity line, but she has been able to make the payments of the refinanced obligation. Mr. Sewell did agree to pay the amount of the equity line, but the fact that his obligation did not terminate in the event of the remarriage or death of Ms. Sewell suggests that this not an obligation for alimony, maintenance or support.

Ms. Sewell has the burden of proving that her claim is a domestic support obligation, and she has not met that burden. Mr. Sewell's obligation is more in the nature of a property settlement, in which Ms. Sewell received the most valuable asset, the Princeton home. The obligation is not a domestic support obligation and the debtor's objection to her amended claimed is **ALLOWED**, and Ms. Sewell's claim shall be allowed as a general unsecured claim.

However, that does not mean that the debtor's plan is confirmable. A plan may not be confirmed unless it meets all of the requirements of § 1325(a), including the requirement of § 1325(a)(3) that the plan has been proposed in good faith. Determining good faith requires the court to examine the totality of the circumstances, including the treatment of individual creditors such as Ms. Sewell. In the circumstances of this case, her chapter 13 plan treatment is not fair.

Although the debtor's obligation to her may not be a domestic support obligation, the debt is one that would be nondischargeable in a chapter 7 case. 11 U.S.C. §§ 727(b); 523(a)(15). Ms. Sewell's claim need not be paid in full for the plan to be confirmed, but her claim should receive more than is currently provided. Accordingly, the objection to confirmation is **ALLOWED** without

prejudice to the debtor's right to resubmit a plan that will meet the standard contemplated by § 1325(a)(3).

      **SO ORDERED**.

**END OF DOCUMENT**